FILED'11 SEP 9 13:52USDC-ORM

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

JACOB FRANKLIN,                                          Civ. No. 10-00382-CL

        Plaintiff,

                                             ORDER

      v.

MARTY CLARKE; COLIN FAGAN;
MICHAEL S. WINTERS; GLENN FORD;
TERRY LARSON; and JACKSON COUNTY,
OREGON,

        Defendants.

_____

CLARKE, Magistrate Judge.

        Plaintiff Jacob Franklin filed his Amended Complaint against Defendants alleging

violation of his civil rights, particularly his due process and equal protection rights, as well as

state law claims for violation of the Oregon whistle-blower statutes. Plaintiff also brings

common law claims for wrongful discharge and intentional infliction of emotional distress. This

court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. The parties have executed

written consents to entry of judgment by a magistrate judge (#60). 28 U.S.C. § 636(c). Before

1 - ORDER

the court is Defendants' motion for summary judgment (#51). For the reasons explained, the

court grants in part and denies in part Defendants' motion for summary judgment.

## BACKGROUND

Construing the facts in the light most favorable to the non-movant, the record reveals the

following[1]:

On November 26, 2007, Plaintiff Jacob Franklin was hired as a probationary employee of

the Jackson County Sheriff's Office (JCSO). On the same day, Plaintiff signed the Jackson

County At-Will Employment Statement of Policy. Plaintiff was subject to the Jackson County

Sheriff's Employee's Association Collective Bargaining Agreement (CBA). Plaintiff was

employed as a patrol deputy by the JCSO.

On March 31, 2009, Plaintiff conducted a traffic stop on Ron Oachs (Oachs). After

pulling to the side of the road, Oachs exited his vehicle. Plaintiff ordered Oachs to get back

inside the vehicle. Oachs refused. Plaintiff ordered Oachs to walk to the back of the truck.

Oachs complied. Oachs took out a wallet or billfold and began to search through it. Plaintiff

seized Oachs and forced him to the ground. JCSO Deputy Linda Crook (Crook) arrived on the

scene. Deputy Crook assisted Plaintiff in handcuffing Oachs. Deputy Crook recognized Oachs

as a retired deputy sheriff with the JCSO. Deputy Crook informed Plaintiff that Oachs was a

retired deputy. Shortly afterwards Defendant JCSO Deputy Sergeant Marty Clark (Clark)[2]

---

[1] The court does not rely on any evidence which was the subject of Defendants' motion to strike (#114) or which was contained in Plaintiff's July 11, 2011, declaration (#127, allowed by #128). See infra.

[2] Defendant Clark is named as "Marty Clarke" in the caption of the case. The record reveals that his name is properly "Marty Clark."

2 - ORDER

arrived on the scene. Plaintiff did not issue a citation to Oachs. Oachs was subsequently released.

After returning to the JCSO, Defendant Clark watched video footage of the encounter between Plaintiff and Oachs taken by the dashboard camera in Plaintiff's patrol car. Plaintiff prepared an Incident Report describing the Oachs traffic stop. Defendant Clark suggested alterations to the report. Defendant Clark then showed the dashboard camera video to his superior, Defendant Lieutenant (now Captain) Terry Larson (Larson). On either March 31 or April 1, 2009, Defendant Larson showed the video to the command staff of the JCSO, including Defendant Sheriff Mike Winters (Winters). On April 2, 2009, Plaintiff was placed on administrative leave. Defendant Winters also ordered an Internal Affairs (IA) investigation. Defendant Winters consulted with the Jackson County Human Resources Department and determined that Plaintiff was still a probationary employee.

On April 2, 2009, Defendant Detective Sergeant Colin Fagan (Fagan) was assigned to conduct the IA investigation. On April 7, 2009, Defendant Fagan interviewed Plaintiff in conjunction with the IA investigation. Immediately after Plaintiff's April 7 interview with Defendant Fagan, Administrative Sergeant Glenn Ford[3] gave Plaintiff a letter from Winters terminating Plaintiff's employment. Plaintiff has been unable to find new employment with Oregon law enforcement agencies. Plaintiff has been unemployed since his termination by the JCSO.

---

[3]Although Sergeant Ford is named as a defendant in the caption, he is no longer a defendant in this case.

3 - ORDER

Defendant Fagan completed his IA investigation on July 6, 2009, and submitted an Internal Affairs Report detailing the findings of the IA investigation to Defendant Winters and the JCSO command staff. Sometime in August or September of 2009, Jackson County Attorney Akin Blitz advised Undersheriff Rod Countryman (Countryman) that he was required by law to send a copy of the completed IA report to the Oregon Department of Public Safety Standards and Training (DPSST). On September 11, 2009, Countryman submitted the IA Report to the DPSST. Under Oregon law, the DPSST considers IA reports to be exempted from Oregon public disclosure laws and maintains the confidentiality of IA reports. The DPSST will not release an IA report unless presented with a signed waiver or required to do so by law.

Plaintiff filed his complaint in this case on April 6, 2010. Defendant Jackson County received Plaintiff's Tort Claims Notice on October 2, 2009.

### LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(a), The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving

4 - ORDER

party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond

the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all

reasonable doubts as to the existence of genuine issues of material fact should be resolved against

the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in

the light most favorable to the non-moving party. T.W. Elec., 809 F.2d at 630.

**DISCUSSION**

**DEFENDANTS' MOTION TO STRIKE AND PLAINTIFF'S SUPPLEMENTAL
AFFIDAVIT**

Defendants have filed a motion to strike certain evidence offered by Plaintiff having to do

with Plaintiff's applications for employment following his termination and his explanation in his

affidavit of why he ordered Oachs back into his vehicle. Because the court does not reach these

issues in the resolution of Defendants' motion, Defendants' motion is moot.

Plaintiff offers his July 18, 2011, affidavit offering evidence that he was not a

probationary employee at the time of his discharge. Under the relevant law, this evidence does

not change the court's ruling as to Plaintiff's due process claim , discussed infra.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### I. Plaintiff's Federal Claims

A plaintiff who asserts a claim under § 1983 must establish "(1) that a right secured by

the Constitution or laws of the United States was violated, and (2) that the alleged violation was

committed by a person acting under the color of State law." Long v. Cnty. of L.A., 442 F.3d

5 - ORDER

1178, 1185 (9th Cir. 2006).  On the merits, Defendants' claim that there is no issue of material

fact as to Plaintiff's claims under § 1983 and that they are entitled to summary judgment as a

matter of law and, even if Plaintiff proves that there is a material issue as to whether a

constitutional violation occurred, Defendants are entitled to qualified immunity.  Plaintiff

contends that Defendants are not entitled to qualified immunity and that there are issues of

material fact as to their claims under § 1983.

### A. Qualified Immunity

Qualified immunity shields government agents from suit for damages if a reasonable

official performing discretionary functions could have believed that his or her conduct was

lawful in light of clearly established law and the information possessed by the official.  Anderson

v. Creighton, 483 U.S. 635, 637-39, 641, 107 S. Ct 3034 (1987); Hunter v. Bryant, 502 U.S. 224,

112 S. Ct. 534 (1991) (per curiam).  This standard shields all government officials except those

who are either plainly incompetent or knowingly violate the law.  Malley v. Briggs, 475 U.S.

335, 341, 106 S. Ct. 1092 (1986).  Ordinarily, the courts employ the sequential analysis set forth

in Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001), first determining whether the facts

alleged by plaintiff, taken in the light most favorable to plaintiff, establish a constitutional

violation; and, if a violation could be established under the facts alleged, then considering

whether the right was clearly established.  Id. at 201.  If no constitutional right would have been

violated under the facts alleged, the analysis ends.  Id.  However, in Pearson v. Callahan, 555

U.S. 223, 236, 129 S. Ct. 808 (2009), the Supreme Court receded from the mandated Saucier

analysis, holding that, "while the sequence set forth there is often appropriate, it should no longer

be regarded as mandatory."  Instead, courts "should be permitted to exercise their sound

6 - ORDER

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. In the circumstances of this case, the court will address the first prong.

For the reasons discussed below, the record, construed in the light most favorable to Plaintiff, does not reveal a constitutional violation. Following the guidance of Saucier, no further inquiry into the issue of qualified immunity is necessary.

### B. Plaintiff's Due Process Claims

Plaintiff asserts that the Defendants terminated him without due process of law in violation of the Fourteenth Amendment. The Fourteenth Amendment's guarantee of due process applies when a constitutionally protected liberty or property interest is at stake. Board of Regents of State Colls. v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701 (1972). Plaintiff asserts that both his property and liberty interests were implicated in the termination.

### 1. Property Interest

Defendants argue that Plaintiff has no protected property interest in his continued employment with the JCSO because he was an at-will, probationary employee. Plaintiff claims that the JCSO Standard Operating Procedures vested him with a protected property interest in his position and entitled him to a hearing prior to his termination. Defendants contend that Plaintiff signed the Jackson County At-Will Employment Statement of Policy acknowledging Plaintiff's at-will employment status. Defendants further argue that Plaintiff was subject to the CBA, which states that probationary employees are at-will employees without protected property interests.

Individuals who have a property interest created by an "independent source, such as state law" are entitled to procedural due process protections. Roth, 408 U.S. at 577; Lawson v.

7 - ORDER

Umatilla County, 139 F.3d 690, 692 (9th Cir. 1998). In Oregon, a property right can be created

by a statute or regulation, see Brady v. Gebbie, 859 F.2d 1543, 1549 (9th Cir. 1988), or by city

personnel policies or handbooks, see Brunick v. Clatsop Cnty., 204 Or. App. 326, 332-33, 129

P.2d 738 (2006). "At-will" employees are not entitled to constitutional due process protection.

Lawson 139 F.3d at 692 (citing Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir.

1993)).

      Even if an employee handbook or personnel policy seems to create a property interest in a

job, "Oregon courts have consistently held that a disclaimer in an employee handbook or

personnel polic[y] is sufficient to retain an employee's at-will status." Lawson, 139 F.3d at 693.

Plaintiffs retain their "at-will" status even when the employee handbook or other policy provides

that the employees should only be terminated for certain reasons or after certain procedures, id.

(citing Gilbert v. Tektronix, Inc. 112 Or. App. 34, 827 P.2d 919, 920-21 (1992)), or when the city

had a "standard practice of affording hearings," Curtis v. City of Redmond, 303 F.App'x 560,

562 (9th Cir. 2008).

      In Lawson, the plaintiff, Lawson, was an employee of Umatilla County who was

terminated by the County. Lawson, 139 F.3d at 691. At the time of his termination, Lawson had

passed his probationary period and was classified as a "permanent" employee. Id. Umatilla

County Personnel Policies laid out the circumstances and procedure for the termination of a

permanent employee, but also contained a disclaimer preserving Lawson's at-will status. Id.

Following his termination, Lawson sued, alleging that the terms of the County's Personnel

Policies conferred a protected property interest in his continued employment. Id. The trial court

ruled in favor of Lawson on the property interest issue, but the Ninth Circuit reversed, holding

8 - ORDER

that, because the Personnel Policies contained a disclaimer, Lawson was still an at-will employee. Id. at 694. Because they contained a disclaimer, the County's rules about termination of permanent employees "merely provide a framework for disciplining at-will employees which is not binding on the County." Id. at 693-94. As an at-will employee, Lawson had no protected property interest in his continued employment. Id. at 692.

In the present case, Plaintiff argues that the termination procedures outlined in the JCSO Standard Operating Procedures confer a protected property interest and that Plaintiff was entitled to a hearing before he was terminated. The Jackson County At-Will Employment Statement of Policy provides that "all employees are at-will employees" and that completion of a probationary period or conference of regular status does not change the employee's status as an at-will employee. (Le Gore Aff. Ex. 1.) Plaintiff admits to having signed this Policy, acknowledging that he was an at-will employee. Plaintiff was further subject to the CBA which states: "Probationary employees are 'at will' employees who serve at the pleasure of the Sheriff and who may be terminated at any time during the probationary period with no recourse whatsoever." (#107-10, Defs. Ex. 28, 4). Like the County Personnel Policies in Lawson, JCSO Standard Operating Procedures merely provide a non-binding framework for disciplining at-will employees and do not create a protected property interest.

Because nothing in the record confers on Plaintiff any protected property interest in his continued employment and because Plaintiff acknowledged his at-will employment status in writing, Plaintiff's claim for deprivation of his property interest in violation of due process fails as a matter of law.

9 - ORDER

## 2. Liberty Interest

Defendants argue that Plaintiff cannot demonstrate a violation of his liberty interest, either in his termination or in the creation of the IA Report. Plaintiff argues that his liberty interest was violated when he was denied the opportunity of a name-clearing hearing prior to the creation of the IA Report and that the IA Report has significantly foreclosed his employment opportunities. Defendants counter-argue that Plaintiff was not entitled to a name-clearing hearing before the IA Report was printed and that the IA Report contains no stigmatizing charges or allegations which would implicate Plaintiff's liberty interest. Defendants also contend that there was no publication of the IA Report.

The liberty interest prong of the due process clause "encompasses an individual's freedom to work and earn a living." Bollow v. Fed. Reserve Bank of S. F., 650 F.2d 1093, 1100 (9th Cir. 1981). Accordingly, a public employee is entitled to due process protection if the government stigmatizes the employee by making a charge against him which "impairs [the employee's] reputation for honesty or morality." Matthews v. Harney Cnty. Or. Sch. Dist. No. 4, 819 F.2d 889, 891 (9th Cir. 1987). A stigmatizing charge is one which "'seriously damages a person's reputation'" or "'significantly forecloses his freedom to take advantage of other employment opportunities.'" Bollow, 650 F.2d at 1101 (quoting Jablon v. Trs. of Cal. State Colls., 482 F.2d 997, 1000 (9th Cir. 1973). Whether an employer's statements stigmatize an employee is generally a question of fact. Campanelli v. Bockrath, 100 F.3d 1476, 1480 (9th Cir. 1996).

In addition to the stigma, the plaintiff must show that "'1) the accuracy of the charge is contested; 2) there is some public disclosure of the charge; and 3) the charge is made in

10 - ORDER

connection with termination of employment.'" <u>Brady</u>, 859 F.2d at 1552 (quoting <u>Matthews</u>, 819 F.2d at 891-92). "When reasons are not given [for dismissal], inferences drawn from dismissal alone are simply insufficient to implicate liberty interests." <u>Bollow</u>, 650 F.2d at 1101. The inclusion of stigmatizing information in an individual's personnel file can qualify as a "public disclosure" and require a name-clearing hearing if the personnel file is a public record. <u>Cox v. Roskelley</u>, 359 F.3d 1105, 1112 (9th Cir. 2004). However, Oregon law exempts "[a] personnel discipline action, or materials or documents supporting that action" from public disclosure, unless public interest requires disclosure. OR. REV. STAT. § 192.501(12). Because such files are not public records subject to disclosure under Oregon law, "the mere placement of stigmatizing information in an employee's personnel file does not constitute publication under Oregon law sufficient to require notice and a name-clearing hearing." <u>Boggs v. Hoover</u>, Civil No. 09-116-ST 2009 WL 2447553, at *8 (D. Or. Aug. 6, 2009).

In this case, Plaintiff contests the accuracy of the IA Report. Additionally, there may exist a genuine factual dispute regarding whether the information contained in the IA Report is stigmatizing, as well as whether the charges were made "in connection with the termination." Plaintiff's liberty interest has not been implicated, however, as there is no evidence that the JCSO ever publically disclosed the information contained in the IA Report.

Plaintiff argues that the transmission of the IA Report from the JCSO to the DPSST qualifies as public disclosure. However, there is no evidence that the DPSST has broken the confidentiality of its records or made any public disclosure of the contents of the IA Report. Because there was no public disclosure of the IA Report, Plaintiff was not entitled to a name

11 - ORDER

clearing hearing prior to the creation of the report, or its transmission to the DPSST.  Plaintiff's

liberty interests have not been violated by Defendants' actions.

### C. Plaintiff's Equal Protection Claim

Defendants argue that Plaintiff has brought a "class of one" equal protection claim and

that, as "class of one" claims are impermissible in public employment disputes, they are entitled

to summary judgment.  Plaintiff argues that his claim is not a "class of one" claim, but that he

was terminated "in retribution for arresting an ex-deputy sheriff." (#92 Pl. Opp'n Mem., 21).

Defendants counter-argue that Plaintiff has not stated a valid equal protection claim and that they

are entitled to summary judgment on the issue.

To establish an equal protection claim under the Fourteenth Amendment, Plaintiff must

either establish that he is part of a protected class or that he is entitled to protection as a "class of

one." Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601, 128 S. Ct. 2146 (2008).  Under either

theory, Plaintiff must prove that he was intentionally treated differently from others similarly

situated and that there is no rational basis for the difference in treatment.  Id.

Plaintiff does not claim membership in a protected class, but in certain limited

circumstances, plaintiffs are permitted to bring Equal Protection claims without alleging

membership in a class or group.  Under the "class of one" theory of equal protection, a plaintiff

must show that he or she was "intentionally treated differently from others similarly situated and

that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech,

528 U.S. 562, 564, 120 S. Ct. 1073 (2000) (per curiam).

The situation is significantly different in the context of public employment.  "[T]he

government as employer indeed has far broader powers than does the government as sovereign."

12 - ORDER

Waters v. Churchill, 511 U.S. 661, 671, 114 S. Ct. 1878 (1994). Public employees are protected

by the Equal Protection Clause in situations where "the government makes class-based decisions

in the employment context, treating distinct groups of individuals categorically differently."

Engquist, 553 U.S. at 605. However, the "'class-of-one' theory of equal protection has no place

in the public employment context." Id. at 594.

> Our traditional view of the core concern of the Equal Protection Clause as a shield
> against arbitrary classifications, combined with unique considerations applicable
> when the government acts as employer as opposed to sovereign, lead us to
> conclude that the class-of-one theory of equal protection does not apply in the
> public employment context.

Id. at 598.

Plaintiff alleges that he was fired for arresting an ex-law enforcement officer while those

deputies who arrest civilians with no connection to law enforcement are not penalized. Plaintiff

alleges that this disparity in treatment is a violation of the Equal Protection Clause of the

Fourteenth Amendment. Plaintiff is unable to meaningfully distinguish his claims from a "class

of one" equal protection claim.

Under Engquist, "class of one" equal protection claims are not permitted in the public

employment context. Plaintiff has not claimed membership in a protected class or group.

Plaintiff's equal protection claim, therefore, fails as a matter of law.


## II. Plaintiff's State Claims

Plaintiff makes several claims under the Oregon whistle-blower statutes, as well as

common law claims for wrongful termination and intentional infliction of emotional distress.

Plaintiff has conceded that the individual Defendants are not proper defendants under the Oregon

13 - ORDER

Tort Claims Act or the Oregon Whistle-blower Statute and proceeds against Defendant Jackson
County only.

### A. Statute of Limitations.

Defendants assert that both Plaintiff's statutory claims and common law claims are
limited by their statutes of limitation. Defendants contend that OR. REV. STAT. § 659A.875(1)
limits Defendants' liability for Plaintiff's claims under OR. REV. STAT. §§ 659A.199, 659A.203
and 659A.230. Defendants also contend that Plaintiff's common law claims are limited by the
date of the Tort Claims Notice under OR. REV. STAT. § 30.275(2).

### 1. OR. REV. STAT. § 659A.875(1)

OR. REV. STAT. § 659A.875(1) requires that the plaintiff must commence his action
within one year after the occurrence of the unlawful employment practice. In the present case,
Plaintiff alleges that he was unlawfully terminated on April 7, 2009. Plaintiff filed his initial
Complaint on April 6, 2010 (#1). Plaintiff is therefore within the statutory time frame and his
claim is timely.

### 2. OR. REV. STAT. § 30.275(2)

OR. REV. STAT. § 30.275(2) requires that the plaintiff give notice of his claim within 180
days of the alleged loss or injury. Plaintiff gave his Tort Claims Notice on October 2, 2009.
Plaintiff alleges that he suffered a wrongful discharge, which occurred on April 7, 2009.
Plaintiff's wrongful discharge claim is therefore within the statutorily mandated 180 days.
Plaintiff's claim for intentional infliction of emotional distress is based upon the creation of the
IA Report and its transmission to the DPSST. The IA Report was completed on July 6, 2009,

14 - ORDER

and was transmitted to the DPSST on September 11, 2009. Both dates are within the statutorily required 180 days. Plaintiff's Tort Claims Notice is therefore timely.

### B. Plaintiff's Whistle-blower Claims

Plaintiff alleges that he was fired for making a good faith report of violation of law, rule, or regulation by Oachs and Defendant Clark and that his termination was in violation of OR. REV. STAT. §§ 659A.199 and 659A.203. Plaintiff alleges that he made his good faith report to Defendants Fagan and Winters. He also alleges that he was fired for making a good faith report of criminal conduct by Oachs and Defendant in violation of OR. REV. STAT. § 659A.230. Defendants contend on summary judgment that Plaintiff's claim fails because Defendant Winters did not know about any allegation of criminal activity by Defendant Clark when he terminated Plaintiff's employment, and that Plaintiff did not report or intimate that Defendant Clark had engaged in official misconduct or any other criminal activity to Defendant Fagan during the IA interview.

Oregon's whistle-blower laws, OR. REV. STAT. §§ 659A.199, 659A.203 and 659A.230, prohibit employers from imposing certain employment actions on individuals who make good faith reports of misconduct. OR. REV. STAT. § 659A.199 prohibits employers from, in relevant part, discriminating or retaliating against employees who "in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." OR. REV. STAT. § 659A.199(1). OR. REV. STAT. § 659A.203 prohibits employers from, in relevant part, taking or threatening to take disciplinary action against employees for disclosing information of evidence of violations of law or regulations or "[m]ismanagement" or "abuse of authority" resulting from action of the state, agency or political subdivision. OR. REV. STAT. §

15 - ORDER

203(1)(b)(A)(B). OR. REV. STAT. § 659A.230 prohibits, in relevant part, retaliation or discrimination against employees who have in good faith reported criminal activity of any person, or caused a criminal or civil case to be initiated. OR. REV. STAT. § 659A.230(1).

In order to survive summary judgment on a statutory whistle-blower retaliation claim, a plaintiff must show the existence of facts from which a reasonable fact-finder could conclude that he engaged in the protected activity and that the defendants retaliated against him in response to that activity. Merrill v. M.I.T.C.H. Charter School Tigard, Civil No. 10-219-HA, 2011 WL 1457461, at *7 (D. Or. Apr. 4, 2011). "[I]f the employer asserts a non-discriminatory reason for the employee's termination, the plaintiff must show that the employer would not have made the same decision absent a discriminatory motive." Id. (citing El-Hakem v. BJY Inc., 415 F.3d 1068, 1076 (9th Cir. 2005)).

In Bjurstrom v. Oregon Lottery, 202 Or. App. 162, 168, 169, 171, 120 P.3d 1235 (2005), the Oregon Court of Appeals found that "the term 'disclose' may be understood to mean, in a general sense to 'make known' or to 'open up to general knowledge,'" and that protected disclosures include "reports of wrongdoing within an agency or department," as well as to outsiders. However, reports of wrongdoing are not "disclosures" unless they are made "to a person who was previously unaware of the information, meaning someone 'in a supervisory position, other than the wrongdoer himself.'" Clarke v. Multnomah County, No. CV-06-229-HU 2007 WL 915175, at *14 (D. Or. Mar. 23, 2007) (quoting Huffman v. Office of Personnel Mgmt., 263 F.3d 1341, 1351 (Fed. Cir. 2001), aff'd, 303 F.Appx. 512 (9th Cir. 2008)).

Further, this district has concluded that OR. REV. STAT. § 659A.199 "protects employees who make an external or internal report that is intended or likely to result in the employer's

16 - ORDER

enforcement or compliance with state and federal law." Merrill, 2011 WL 1457461, at *8. The

district has also concluded that the word "report," as used in OR. REV. STAT. § 659A.230,

"contemplates some action that is intended to or likely to result in a criminal or civil proceeding."

Roche v. La Cie, Ltd., No. CV 08-1180-MO, 2009 WL 4825419, at *7 (D. Or. Dec. 4, 2009)

(internal quotation omitted); Beauchamp v. AGC Heat Transfer, Inc., No. CV-09-1407-HU, 2010

WL 4641684, at *3-*5 (D. Or. Nov. 8, 2010).

     Here, plaintiff offers his declaration in which he declares that, at the scene of his stop of

Oachs on March 31, he told Defendant Clark he wanted to arrest Oachs for interfering,

disobeying an order, resisting arrest, and assaulting a police officer. Plaintiff recites in his

declaration certain behavior and statements by Defendant Clark which Plaintiff interpreted as

Defendant Clark "us[ing] his authority to allow Oachs to go free." He declares that Defendant

Clark "ordered" him to redo the incident report he had prepared, telling him to remove certain

statements about what had happened at the scene. (Franklin Decl. at 9-11 ¶ 10, at 12 ¶ 12.)

Plaintiff states that he provided the report to Defendant Clark, who read it, and provided it to

Defendant Larson, who glanced at it, stating, "'Good, that's what I want.'" (Franklin Decl. at 11

¶ 11.) Plaintiff declares that Defendant Clark told Defendant Larson that Plaintiff had accused

Oachs of several crimes and of violating a traffic law; Plaintiff states that he had made his

accusation in good faith based upon the facts of the incident. (Franklin Decl. at 21 ¶ 29.)

Plaintiff also declares that, on April 1, Defendant Clark told him that he owed Plaintiff an

explanation for his conduct at the scene. Plaintiff states that, in that conversation, Defendant

Clark told him he had been angry at the scene because Oachs was his friend and he was biased.

Clark told Plaintiff that, after he had reviewed the video with some instructors and sergeants,

17 - ORDER

they had all agreed that Plaintiff's conduct during the incident was according to training and his use of force was reasonable and justified, and he was cleared from any suggestion of improper conduct. (Franklin Decl. at 12 ¶ 13.) Plaintiff also declares that, during his April 7, 2009, IA interview by Defendant Fagan, Defendant Fagan appeared to be distracted and was "frequently texting/emailing and reading on his cell phone." (Franklin Decl. at 14 ¶ 16.) Plaintiff further declares in his declaration that, within a week of his termination, he and Defendant Winters had a telephone conversation in which Defendant Winters communicated to him: "if Ron Oachs was just another citizen rather than an ex-deputy Sheriff, I would not have been terminated or disciplined in any fashion." (Franklin Decl. at 1 ¶ 2.)

While defendants offer contradictory evidence, drawing all reasonable inferences and considering the evidence in the light most favorable to Plaintiff, a jury could conclude that Plaintiff's termination of employment was due to his accusation of a former sheriff's deputy of criminal activity and/or his accusation that Defendant Clark had abused his authority by requiring him to change his official incident report of his encounter with Oachs and was not due to any alleged violation of Oachs' constitutional rights during the March 31 stop and/or with any prior incidents Plaintiff was involved in. Plaintiff's evidence is that Defendant Clark apologized to Plaintiff for his conduct at the scene and told Plaintiff that nothing was wrong with what he had done at the scene and that Winters told him that he would not have been disciplined or discharged except for the fact that Oachs was a former deputy sheriff. Plaintiff's evidence raises the reasonable inference that information somehow filtered up the chain to Sheriff Winters of Plaintiff's accusations against Oachs and /or Defendant Clark prior to Plaintiff's termination.

18 - ORDER

Although the court acknowledges that serious questions exist about what Defendant Winters knew prior to his termination of Plaintiff's employment, the court finds that plaintiff's evidence is sufficient to go forward to trial as to claims that Defendant Jackson County retaliated against Plaintiff in violation of OR. REV. STAT. §§ 659A.199 and 659A.203.

Defendants offer evidence from Defendant Winters that Plaintiff was terminated because of unsatisfactory job performance based upon Winter's review of Plaintiff's conduct observed in the Oachs video which he believed to be unconstitutional and two prior incidents of Plaintiff's interactions with citizens. (Winters Decl.) However, Plaintiff offers his evidence that Defendant Winters had told him after he was terminated that he would not have been terminated but for the fact that Oachs was an ex-deputy Sheriff, which is evidence that Defendants' reason for terminating Plaintiff was pretextual.

Plaintiff offers evidence which raises a genuine issue of material fact as to his statutory whistle-blower retaliation claims, OR. REV. STAT. §§ 659A.199 and 659A.203. Accordingly, Defendants motion for summary judgment as to these claims are denied and their motion as to Plaintiff's OR. REV. STAT. §§ 659A.230 claim is granted.

### C. Plaintiff's Wrongful Discharge Claim

Plaintiff claims that he was terminated for reporting misconduct by Oachs and Defendant Clark. Plaintiff argues that his termination was against public policy and is therefore a wrongful discharge. Defendants argue that Plaintiff's claim for wrongful discharge fails for lack of evidence. Defendants contend that the statutory protections for whistle-blowers provide an adequate and even a greater remedy than the common law wrongful discharge action, which supersedes Plaintiff's common law cause of action.

19 - ORDER

In Oregon, wrongful discharge serves as a narrow exception to the at-will employment
doctrine where the discharge is against public policy. Draper v. Astoria Sch. Dist. No. 1C, 995 F.
Supp. 1122, 1127 (D. Or. 1998) (citing Walsh v. Consol. Freightways, Inc., 278 Or. 347, 351-52,
563 P.2d 1205 (1977)), abrogated in part on other grounds by Rabkin v. Or. Health Scis. Univ.,
350 F.3d 967 (9th Cir. 2003). Plaintiff's claim for wrongful termination rests on the same
ground as his claims under the whistle-blowing statutes, OR. REV. STAT. §§ 659A.199, 659A.203
and 659A.230. If Plaintiff was terminated in retaliation for reporting violation of law or abuse of
authority, such a termination would be against public policy.

There is some disagreement between courts within this district and the Oregon Court of
Appeals as to whether the availability of a statutory remedy in the form of Oregon's whistle-
blower statutes preclude a claim for wrongful discharge. In Hutton v. Jackson County, No. 09-
3090-CL, 2010 WL 4906205, at *11 (D. Or. Nov. 23, 2010), this court relied on Olsen v.
Deschutes County, 204 Or. App. 7, 14, 127 P.2d 655, review denied, 341 Or. 80 (2006), to hold
that a wrongful discharge claim could proceed in addition to a state statutory whistle blowing
claim.[4] The court has since reviewed the conflicting decisions and agrees with the reasoning of
the majority of the district's decisions which hold that "'if an adequate statutory remedy exists, a
common law wrongful discharge claim based on the same conduct is precluded.'" Whitley v.
City of Portland, 654 F. Supp.2d 1194, 1224 (D. Or. 2009) (quoting Reid v. Evergreen Aviation
Ground Logistics Enters., Inc., Civ. No. 07-1641-AC, 2009 WL 136019, at *16 (D. Or. Jan. 20,
2009) and citing Draper, 995 F. Supp. at 1130-31); Duran v. Window Prods., Inc., CV No.

---

[4] This determination made no difference in the result because the court found that the
claim failed on its merits. Id.

20 - ORDER

10-125-ST, 2011 WL 1261190, at *2-*3 (D. Or. Mar. 29, 2011); but see Krouse v. Ply Gem Pac.

Windows Corp., ___ F. Supp.2d ___, Civil No. 10-111-HA, 2011 WL 2971774, at *8 (D. Or.

July 19, 2011).

    Because Plaintiff has an adequate remedy in his state statutory whistle-blower claims, his

wrongful discharge claim is precluded. For this reason, Defendants are entitled to summary

judgment as to Plaintiff's wrongful discharge claim.

### D. Plaintiff's Claim for Intentional Infliction of Emotional Distress

    Plaintiff alleges that, by creating the IA Report and transmitting it to the DPSST, they

have caused him to suffer intentional infliction of emotional distress (IIED). Defendants argue

that Plaintiff's claim fails for complete lack of evidence. Plaintiff argues that the creation of the

IA Report, as well as its transmission to the DPSST by the JCSO, were done with the intent to

inflict emotional distress on the Plaintiff and that the claim should survive. Defendants contend

that the transmission of the IA Report to the DPSST was done in a standard manner and does not

meet the requirements of an IIED claim. Defendants claim that they are entitled to summary

judgment on this issue.

    The tort of IIED requires "(1) the defendant intended to inflict severe emotional distress

on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional

distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of

socially tolerable conduct." McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995).

"Because proof of intent is often indirect and evidence of psychic harm is usually self-serving,

proof of this tort largely turns on . . . whether a defendant's conduct is sufficiently outrageous."

House v. Hicks, 218 Or. App. 348, 358, 179 P.3d 730 (2008). The trial court plays a "gatekeeper" role in making the determination of whether the defendant's conduct "goes beyond the farthest reaches of socially tolerable behavior." Id. "[C]ourts are more likely to consider behavior outrageous if it is inflicted on the vulnerable partner in a 'special relationship' such as employer-employee." Clemente v. Oregon, 227 Or. App. 434, 442, 206 P.3d 249, 255 (2009). However, "managerial decisions that might give rise to conventional employment-related actions do not necessarily qualify as intentional infliction of severe mental distress unless they are also the kind of aggravated acts of persecution that a jury could find beyond all tolerable bound of civilized behavior." Id. (internal quotation marks omitted) (quoting Hall v. May Dept. Stores, 292 Or. 131, 139, 637 P.2d 126 (1981), abrogated on other grounds by McGanty, 321 Or. 532 (1995)).

In Clemente, the plaintiff was a female employee of the Department of Corrections who alleged that she faced gender-based discriminatory treatment at the hands of her supervisor. Clemente, 227 Or. App. at 443. The plaintiff alleged, among other things, that she was the target of false accusations and that her supervisor never properly cleared her name. Id. at 441. The Court of Appeals found the conditions suffered by the plaintiff to be insufficient to sustain an IIED claim. Id. at 443. The court held that, in order for an IIED claim to succeed, the employer must have engaged in more serious conduct, such as using racial slurs or forcing the employee to engage in illegal activities. Id. Mere managerial actions, however "insensitive" and "mean-spirited" did not rise to the requisite level of "aggravated acts of persecution" needed to sustain an IIED claim. Id.

22 - ORDER

In this case, Plaintiff claims that the creation of the IA Report and its subsequent transmission to the DPSST constitute an extraordinary transgression of the bounds of socially tolerable conduct. Plaintiff contends that the requisite intent to cause emotional distress may be inferred from the Defendant's conduct. The record shows that the creation of the IA Report was a managerial response to an incident that might have exposed the County to liability. It is uncontested that the transmission of the IA Report to the DPSST was done on the advice of the County Attorney. It is further uncontested that the JCSO declined to send the IA Report to the DPSST until they were advised by the County Attorney that they were legally obligated to do so. Plaintiff has not alleged any facts indicating that Defendant engaged in the "aggravated acts of persecution" needed to sustain an IIED claim. As in <u>Clemente</u>, the managerial actions of the JCSO as shown in the record could not reasonably be categorized as "extraordinary transgressions" of socially tolerable conduct.

Because Plaintiff is unable to demonstrate that Defendant Jackson County engaged in an extraordinary transgression of the bounds of socially tolerable conduct, Plaintiff's claim must fail as a matter of law. Defendant is entitled to summary judgment on this claim.

## ORDER

Based on the foregoing, it is ordered that Defendants' motion to strike (#114) is moot and that Defendants' motion for summary judgment (#51) is granted in part and denied in part. Plaintiff's claims are dismissed with the exception of his state claims for violation of OR. REV. STAT. §§ 659A.199 and 659A.203.

//

23 - ORDER

IT IS SO ORDERED.

DATED this _____9_____ day of September 2011.

_____
MARK D. CLARKE
UNITED STATES MAGISTRATE JUDGE

24 - ORDER